# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**JOHN COTTAM,**

    Plaintiff,

v.                                                     Case No: 5:16-cv-413-Oc-30PRL

**DOUGLAS PELTON**

    Defendant.

## ORDER

This matter is before the Court on three discovery motions filed by Plaintiff, who is proceeding *pro se*. (Docs. 111, 113, 114).

This lawsuit arises out of Plaintiff's July 23, 2012 arrest for fleeing or attempting to elude law enforcement. Plaintiff's charges were later reduced to reckless driving, and then, ultimately dismissed. Plaintiff claims that he was falsely arrested. Plaintiff filed his initial complaint on June 13, 2016. (Doc. 1). After two amendments, the sole remaining defendant is Officer Douglas Pelton, who arrested plaintiff, and the remaining claims, brought pursuant to 42 U.S.C. § 1983 and state law, are: (a) Count I – False Arrest; (b) Count II – Malicious Prosecution; (c) Count IV – Intentional Infliction of Emotional Distress; and (d) Count V – Negligent Infliction of Severe Emotional Distress. (Doc. 70).

### I.  Motion to Extend Discovery

In their joint case management report filed on November 17, 2016, the parties agreed to a discovery deadline of July 28, 2017. (Doc. 66). The Court entered a Case Management and Scheduling Order setting that date. (Doc. 68). On May 31, 2017, Plaintiff filed a motion to amend

the case management deadlines, including the discovery deadline, "due to unexpected delays in scheduling delays for depositions of witnesses, and both parties' counsel are taking vacations in June." (Doc. 81). The Court granted Plaintiff's motion and extended the discovery deadline until September 29, 2017. (Docs. 82 & 83).

On September 13, 2017, Plaintiff filed his second motion for extension of the discovery deadline by an additional 60 days until November 27, 2017. (Doc. 93). In ruling on the motion, the Court stated:

> In reading Plaintiff's motion to extend discovery (Doc. 93) and the subsequent filings, it is clear that Plaintiff has not diligently pursued discovery. Indeed, it is unclear what if any discovery Plaintiff has taken in the past three months since the Court granted his first request to extend the deadline. Plaintiff's motion simply outlines discovery he plans to take or motions that he intends to file.
>
> Under these circumstances, the requested 60-day extension is not warranted. The Court will nonetheless, grant Plaintiff **one last** extension until **October 27, 2017**. Plaintiff should carefully consider what discovery he still needs to complete and coordinate dates and times with opposing counsel.

(Doc. 102).

Despite the Court's clear language that no further discovery extensions would be granted, Plaintiff has now filed yet another motion for an extension of the discovery deadline, this time until December 29, 2017. Plaintiff claims that the extension is necessary because direct witnesses have not been made available to him in a timely manner and the names of the persons who were and are responsible for handling electronic information have also been withheld. (Doc. 113). The record does not support these claims.

To the contrary, the record suggests that Plaintiff's repeated requests to extend discovery have been caused by his own failure to pursue discovery in a timely and diligent manner. Despite having opportunities to depose Ms. Tanner and Mr. Torminades sooner, Plaintiff waited until October 24, 2017, only three days before the discovery cutoff, to do so. The record shows that Ms.

Tanner was made available on August 22, 2017 for deposition, but Plaintiff declined to depose her that day. (Doc. 94-1). While Mr. Torminades was not available in July 2017 for a deposition because he was on leave for an injury, he was available at least by mid-September. Moreover, defense counsel has filed email communications showing their repeated efforts to schedule the depositions, including offers to waive the 14-day written notice requirement and their agreement to last minute requests to produce documents at the depositions. (Docs. 115-1, 115-2, 115-3, 115-4, 115-5, 115-6, 115-7, 115-8). In fact, although Plaintiff unilaterally scheduled the depositions on October 24, 2017 (and defense counsel could have raised various objections), defense counsel cooperated. Accordingly, Plaintiff's efforts to blame Defendant for the delay in scheduling these depositions is unavailing.

Likewise, Plaintiff's bald assertion that additional issues and witnesses were revealed in the last minute depositions does not justify a further extension of the discovery deadline. Indeed, this is the inherent danger in waiting until the very end of the discovery period to conduct depositions. Moreover, while Plaintiff claims that three new witnesses were identified, Plaintiff has known about at least one of the witnesses—Lt. Poitevent—since Defendant's deposition on May 2, 2017, and took no steps to depose him until now. (Doc. 115-9).

Under these circumstances—where Plaintiff has failed to diligently pursue discovery, and a further extension would delay the case, as trial is set for the February 2018 trial term—Plaintiff's third motion to extend the discovery deadline (Doc. 113) is due to be **DENIED.** Based on this ruling, Plaintiff's motion for leave to exceed the number of depositions (Doc. 114) is denied as moot because discovery has closed in this case.

**II.     Motion to Compel**

Plaintiff also seeks to compel the production of responsive documents to subpoenas served

on the City of Wildwood and Chief of Police Paul Valentino.[1] The introduction of the subpoenas specifically requested: "[a]ll documents related to cases 2012-CF-000503 (Eluding) and 2013-CT-000059—A (Reckless Driving) Defendant John Cottam. . ." The subpoenas included 44 specific requests. At issue here are 16 of the requests. The City and Valentino contend that they have either fully responded to each request or raised objections which should be sustained based upon the overly broad and unduly burdensome requests which are outside the scope of the subpoena and subject lawsuit. They further note that a number of the items requested in the subpoenas were already produced in response to Plaintiff's pre-suit public records request on the City of Wildwood. (Docs. 126 at 3, 126-2, 126-3).

**A. Legal Standards**

Federal Rule of Civil Procedure 45 governs production of documents by a nonparty pursuant to a subpoena. Rule 45(d)(2)(B) provides in relevant part:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested.

That rule further provides that if objections are made, the serving party may move the court "for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

The scope of subpoenas for production of documents pursuant to Rule 45 is the same as the scope of discovery under Rule 26(b) and Rule 34. *Commissariat a L'Energie Atomique v. Samsung Elec. Co.,* No. 8:06–mc–44–T–30TBM, 2006 WL 5003562, *2 (M.D. Fla. June 14,

---

[1] Valentino waived an objection to improper service and produced responses with the City. Plaintiff also served a subpoena on the Wildwood Police Department. Plaintiff's motion to compel does not address the response by WPD, and thus, the Court will not address it here.

2006)). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b).

Rule 45(d)(1) requires that the party issuing a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." It also provides that the court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Furthermore, an order compelling production "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

**B. Discussion**

The Court will discuss each disputed request in turn.

**Number 17**: Car-cam evidence available from every car of the four that were involved in this case that had car cameras on the incident date from the time of 4:20 p.m. through 4:26p.m.

The City and Valentino responded that no such evidence exists. As they explained, Pelton's vehicle, and three of the four officers who responded to the arrest scene did not have cameras in their vehicles. The only responding officer who did was Toromanides, who was in a different location in the city at the time of the arrest. His vehicle camera was not recording when he arrived at the arrest scene. Nonetheless, a copy of the video from Toromanides' vehicle (recording from a different location) has been produced to Plaintiff on at least two occasions. The City and Valentino represent that no other video exists. This response is sufficient.

**Number 18**: All WW police car maintenance records and any and all records that would indicate what equipment was installed in which cars at which time.

The City and Valentino objected on the grounds that the request was overbroad, vague, ambiguous, unduly burdensome, and harassing. While Plaintiff claims that his request is specific

to radar checks and video equipment, the request is still overly broad since it is not confined to the relevant time period or to the vehicles involved in the arrest. Moreover, it does not appear to seek relevant information since Plaintiff has admitted he was speeding, he does not dispute the operation of Officer Pelton's radar, and there is no video recording of any part of the pursuit or arrest. Accordingly, the objections to this request are sustained.

**Number 19**: Documentation showing year/make/model of car and engine size of Officer Pelton's car involved.

The City and Valentino produced a copy of Pelton's patrol vehicle's title and registration (Doc. 126-6). They represent that there is no record showing the vehicle's engine size. While Plaintiff correctly notes that Pelton's expert, Rodney Pack, stated the engine size for the vehicle in his expert report, the information was obtained by Pack separate and apart from the City. Accordingly, this response is sufficient.

**Number 22**: A list and copy of all documents used/read/produced in any investigation that was done regarding the original charges against Plaintiff and Plaintiff's complaint against Officer Pelton by Plaintiff.

While the City and Valentino are not obligated to create a new document (or list), they are required to produce all responsive documents. With that said, in response to number 1, they produced the entire packet the City sent to the State Attorney's Office after Plaintiff's arrest. (Doc. 126-8). This includes the offense/incident report; supplemental reports of Officers Smalt and Poitevent; Arrest Affidavit; Citations; Arrest Inventory Sheet; and Impounded Vehicle Inventory Receipt. Plaintiff also obtained through discovery the City's response to Plaintiff's complaint against Pelton. (Doc. 126-9). Plaintiff argues that the response is incomplete because Valentino said that he reviewed Pelton's deposition. However, Plaintiff already has a copy of Pelton's deposition, so there is no reason to compel the non-parties to produce the deposition again.

**Number 24**: A list and copy of all pictures taken/used/seen in any investigation that was

done regarding the original charges against Plaintiff and Plaintiffs complaint against Officer Pelton by Plaintiff.

Again, while the City and Valentino were not required to create a new document (or list), they were required to produce all responsive documents. However, Plaintiff already obtained the photographs Officer Pelton took at the arrest scene through his public records request. (Docs. 126-2, 126-3, 126-10). Thus, it is unnecessary to require the City and Valentino to produce the same photographs again.

> **Number 26**: A list of all known witnesses and all reports pertaining to the interview(s) of each witness, including the officers that arrived on the scene other than Pelton.

The City and Valentino note that no list exists but also represent that their response to Number 1 contains potentially responsive names and reports. They further state that there are no witness interviews. The individuals at the arrest scene were all Wildwood police officer and to the extent they prepared reports they are included in response to Number 1. Accordingly, the response to Number 1 is fully responsive to this request as well.

Request numbers **30, 31, 32, 33, 41** broadly seek information about all lawsuits, complaints, and disciplinary actions brought against the Wildwood Police department and officers over the past 10 to 15 years.[2] The City and Valentino again assert that no lists exist. They also

---

[2] **Number 30**: A list and copy of all federal and state lawsuits (whether successful or not) against the Wildwood Police department or anyone in the Wildwood police over the last 15 years.

**Number 31**: A list of all complaints brought against any WW police Florida over the last 10 years.

**Number 32**: A list and copy of the responses to all complaints created by Internal affairs, any police officer in the WW police in charge of writing such responses, responses of the Chief of police, and the responses of the police officer so complained about.

**Number 33**: A copy of any administrative and/or disciplinary action against any WW police Officers including Officer Pelton over the last ten years.

**Number 41**: A complete record of any incidents/errors/previous lawsuits initiated

correctly note that the requests are overly broad and seek information well outside the scope of the remaining claims in this case against Pelton—i.e., whether Officer Pelton falsely arrested Plaintiff, maliciously prosecuted Plaintiff, and inflicted emotional distress. Indeed, there are no claims pending against the City, Valentino, or any other officers, and thus, the City (and the Wildwood Police Department's) history is irrelevant to the case. As for Pelton, he confirmed in response to interrogatories that he has not been a party to any other lawsuit. (Doc. 126-14). And, Pelton's performance reviews have been produced through discovery. (Doc. 126-11). Even if there is a history of complaints against Officer Pelton, it is unclear how such information would be relevant to Plaintiff's claim that in this case Officer Pelton falsely arrested him, maliciously prosecuted him, and inflicted emotional distress. Accordingly, the objections to these requests are sustained.

**Number 35**: A copy of the e-signature that is in Captain Valentino's and Chief Reeser's emails.

In addition to noting that no document exists, the City and Valentino point out that Plaintiff already has obtained the requested signature blocks for Valentino and Chief Reeser via his public record requests. (Doc. 126-12). Thus, there is no need to compel a response.

**Number 38**: Documentation showing the number of officers in the WW Police on the date of the incident.

The City and Valentino explain that they have no document that identifies every officer employed at the Wildwood Police Department on the date of plaintiff's arrest. Moreover, they

---

against WW police officers other than Defendant Pelton including WW police
disciplinary suspensions including voluntary leave of absence etc. and the reasons for such
events.

correctly note that the request is overly broad and seeks information irrelevant to the remaining claims solely against Officer Pelton. Accordingly, the objection is sustained.

> **Number 39**: A copy of all WW police manuals that are used for training and/or ongoing operations protocols, which would include such manuals such as training manuals, policy manuals, operations manuals, protocol manuals, etc. IF WW police defers to manuals produced by any other Law Enforcement entity or agency, a copy of those manuals.

The City and Valentino assert that they have complied with Plaintiff's request by producing the City's training manual, which includes a section addressing the duties and responsibilities of the Field Training Coordinator down to the Trainee/Probationary Officer. Moreover, it is unclear how training manuals would be relevant to the remaining claims in this case solely against Officer Pelton. Based on this assertion, the City and Valentino have sufficiently complied with the request.

> **Number 42**: A list of all felony charges either primarily instigated or filed by Officer Pelton and/or cases in which Officer Pelton was a witness to or involved in which resulted in felony or misdemeanor charges filed by the State Attorneys' office or any other Law Enforcement branch over the last ten years.

The City and Valentino stated that the City does not maintain a list of such information. Moreover, the requested information is not relevant to the remaining claims in this case which focus solely on Officer Pelton's arrest of Plaintiff.

> **Number 43**: The Name(s) of persons responsible for maintaining Car Cam evidence at the time of this incident (July 23, 2012), and now.

The City and Valentino objected on grounds that the City does not maintain a list of such information. Moreover, as discussed above with respect to request number 17, there is not any relevant car cam evidence in this case.

Accordingly, for the foregoing reasons, Plaintiff's motion to compel is due to be denied in its entirety.

**DONE** and **ORDERED** in Ocala, Florida on November 17, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties