UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN COTTAM,                                         CASE NO.: 5:16-cv-413-Oc-10PRL

    Plaintiff,

v.

CITY OF WILDWOOD, CITY OF
WILDWOOD POLICE DEPARTMENT,
FLORIDA DEPARTMENT OF LAW
ENFORCEMENT (FDLE), AND CITY OF
WILDWOOD POLICE CHIEF EDDIE
REESER, CITY OF WILDWOOD POLICE
OFFICER PAUL VALENTINO, CITY OF
WILDWOOD POLICE OFFICER
DOUGLAS PELTON, FLORIDA STATE
ATTORNEYS BRAD KING, MARK
SIMPSON, CONRAD
JUERGENSMEYER, MICHELLE SUESS,
AND ED MCDONOUGH, FDLE AGENT
THOMAS STEFFAN, IN THEIR
OFFICIAL AND INDIVIDUAL
CAPACITY,

    Defendants.
_____/

## DEFENDANT SERGEANT DOUGLAS PELTON'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO PELTON'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S REQUEST FOR HEARING

Defendant, Sergeant Douglas Pelton, replies to *Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment and Request for Hearing*, and states:

**A. Introduction**

On October 27, 2017, Pelton filed his summary judgment motion ("motion") based upon his entitlement to qualified immunity, in addition to the existence of actual probable cause, and Cottam's failure to prove his claims of malicious prosecution,

intentional infliction of emotional distress, and negligent infliction of emotional distress. (Doc. 119). On November 17,[1] plaintiff, John Cottam, responded in opposition. (Doc. 137). On November 20, this Court granted Pelton leave to reply to Cottam's response to address certain matters raised in Cottam's response which were not addressed in Pelton's motion, including: (1) the distinction between a Motion to Dismiss and Motion for Summary Judgment; (2) the alleged factual disputes plaintiff contends exist; (3) the inadmissibility of the affidavits of plaintiff, Michael Knezevich, and Sarah Akay; (4) the inadmissibility of plaintiff's "video re-enactment"; (5) the inadmissibility of Cottam's "Acceleration Profile" exhibit; (6) the inadmissibility of plaintiff's prior criminal proceeding; (6); the inadmissibility of plaintiff's communications with the City of Wildwood; (7) the inapplicability of *res judicata*; and (8) plaintiff's request for a hearing on Pelton's *Motion for Summary Judgment*. (Doc. 140).

For the reasons addressed in Pelton's motion, and in his reply below, Pelton's motion should be granted.

### B. Distinction between Motion to Dismiss and Motion for Summary Judgment

Plaintiff argues Pelton's motion should be denied because the Court previously determined plaintiff's second amended complaint (or a least a portion) survived Pelton's motion to dismiss, which, in part, asserted a qualified immunity defense for Pelton. (Doc. 137, p. 1-2). As the Court is aware, when reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v.*

---

[1] Plaintiff was granted an extension of time to respond to Pelton's motion until November 20.

*Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson*, 551 U.S. at 93–94. In contrast, at summary judgment, the Court looks outside the four corners of the complaint to review a complete factual record, and consider the case on the merits. *See generally Vairma v. Carnival Corporation,* 2016 WL 2742400, *1 (S.D. Fla. 2016). The Court's determination that some of Cottam's claims could survive dismissal, was not a determination on the merits of the case. Indeed, the Court, in dismissing the majority of Cottam's second amended complaint, permitted Pelton to argue qualified immunity at the summary judgment phase:

> Viewing the SAC in the light most favorable to Dr. Cottam, and granting it a liberal construction, the Court cannot say that Pelton is entitled to qualified immunity at this time. ***But the Court is willing to reconsider this issue at the summary judgment phase.***

(Doc. 73, p. 12)(emphasis added)

Based upon the record which is now available for the Court's consideration, Cottam's claims fail, and summary judgment is warranted.

### C. No genuine dispute of any material fact.

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Id.*

Cottam argues there are disputed issues of material fact to preclude summary judgment. (Doc. 137, p. 2). Cottam either cannot dispute these facts, or they are

otherwise not material for purposes of defeating summary judgment. Pelton addresses each below.

### 1. "Pelton came after Plaintiff immediately, never losing sight of Plaintiff."

There is no witness to dispute Pelton's personal observations during his pursuit of Cottam. As discussed in Pelton's original motion, Akay cannot testify as to any events after she turned off of U.S. 301 onto Lion Street. She also cannot attest to what Pelton's observations would have been when he initiated the traffic stop, as she was not in his vehicle with his line of sight. Akay admitted during her deposition that she had no knowledge of, or only "guesstimates" of time, speed, and distance. (Doc. 119-9, Akay dep., p. 39, l. 9-25). Cottam also cannot refute Pelton's observations since he claims he never saw Pelton until he was on the railroad tracks, as discussed in Pelton's motion.

Even if this fact were in dispute, it is immaterial to whether Pelton had probable cause to arrest Cottam once he observed Cottam's action after he closed the distance at Cleveland Avenue, or as to whether Pelton had probable cause to arrest Cottam for a violation under Chapter 316 and/or trespassing onto railroad tracks.

### 2. "Plaintiff accelerated away from him after being clocked for speeding."

Cottam misstates the evidence in regards to this issue. First, Pelton's expert's opinions are not part of the summary judgment record as his opinions do not address probable cause. Additionally, Cottam's expert can only speculate as to the speeds of the vehicles at any time during Pelton's pursuit, as neither Cottam, Pelton, nor Akay can attest to any specific speed of any vehicle at any time. Cottam further disregards Pelton's testimony wherein he explained this part of his affidavit:

> Q. Not slowing down is not the same as accelerating. You specifically stated in your testimony that Dr. Cottam accelerated away from you.
>
> A. I believe there is a misunderstanding in that description.
>
> Q. So what would you describe it as more specifically then today?
>
> A. I would, I would describe that when somebody is accelerated, they have their foot on the accelerator. It does not mean that they have to be increasing their speed. If somebody is pushing the accelerator, they are accelerating. If somebody is pushing the brake, they are braking.

(Doc. 119-2, Pelton dep. (civil), p. 15, l. 16 to p. 16, l. 3)

*************************************************************

> Q. So you don't know if Dr. Cottam's speed was increasing or not?
>
> A. I believe that the vehicle was continuing to be accelerated by the driver.
>
> Q. Do you know if he was increasing his speed?
>
> A. I did not have a radar activated, so I cannot give you an answer to that. I do not know.

(Doc. 119-2, Pelton dep. (civil), p. 17, l. 7-13)

Cottam cannot dispute Pelton's observations since he was not aware of Pelton until he was on the railroad tracks. Therefore, he cannot dispute that Pelton observed Cottam continue to accelerate instead of come to a stop in response to his signal. Regardless, whether Cottam ever reduced his speed during the pursuit is irrelevant. The combination of Cottam's failure to stop, Pelton's observation of an abrupt turn, Cottam maneuvering around concrete barricades and trespassing onto railroad tracks, all contributed to Pelton's belief that he was fleeing/attempting to elude (e.g., totality of the circumstances).

### 3. "Pelton had his siren on"

Pelton addressed this issue in his motion. (Doc. 119, p. 14). As discussed, it is not a factual dispute that precludes summary judgment.

### 4. "Plaintiff was seen looking in his rear-view mirror at Pelton."

Pelton addressed this issue in his motion. (Doc. 119, p. 13). As discussed, it is not a factual dispute that precludes summary judgment.

Notably, Cottam accuses Pelton of changing his story because he refers to the side rear-view mirror as simply a rear-view mirror. Yet, Cottam used the very same terminology to describe his left side rear-view mirror during his deposition:

> Q. When you came to that stop, you said you had looked in your rear-view mirror and saw Sergeant Pelton's lights.
>
> A. Well, I didn't look in my rear-view mirror. I saw lights and then looked in my rear-view mirror and saw him.
>
> Q. You saw lights where?
>
> A. In my rear-view mirror, in my left rear-view mirror. He was coming up to my left side.
>
> Q. On your left side --
>
> A. On my left side.
>
> Q. -- rear-view mirror?
>
> A. Right.
>
> Q. The mirror outside of your vehicle.
>
> A. Right.

(Doc. 119-8, Cottam dep., p. 82, l. 3-17).

5. **"Pelton was on the radio calling it out that a car wasn't stopping."**

Pelton addressed this issue in his motion, citing to Pelton and Officer Christopher Smalt's deposition testimony indicating Pelton radioed that Cottam was not stopping. Cottam has never addressed how, if Pelton did not do so, four officers would have been at arrest scene almost simultaneous with Cottam stopping on the railroad tracks.

Regardless, Cottam fails to show how this is a material fact that would prevent summary judgment. There is no evidence that Pelton is required to radio for assistance. Cottam offers only the opinion of Knezevich, who believes Pelton should have followed a certain protocol he read about in "recommended" books, several years ago during his training with the Department of Treasury. (Doc. 123). Knezevich has no knowledge of the City of Wildwood's policies or procedures. To the extent the Court considers this as a possible material fact, Pelton further includes by reference his *Motion to Strike Plaintiff's Expert* (Id.), wherein Pelton outlined the bases for striking Knezevich as an expert.

6. **"Pelton witnessed Plaintiff making an extremely abrupt, reckless turn at Oxford St."**

Cottam does not dispute that he turned onto Oxford Street, maneuvered around concrete barricades, and crossed onto railroad tracks. Whether Cottam turned abruptly is a subjective evaluation made by Pelton. Regardless, it is immaterial. Pelton had probable cause to arrest Cottam for fleeing/attempting to elude based upon the totality of the circumstances of failing to stop when signaled, turning onto Oxford and failing to stop at locations along Oxford that were available to him, maneuvering around concrete barricades, and trespassing onto railroad tracks.

Pelton also had probable cause to arrest Cottam for a violation of Chapter 316 and trespassing.

### 7. "Pelton observed Plaintiff going around concrete blocks recklessly."

Cottam admits he maneuvered around concrete barricades and crossed onto the railroad tracks. Whether he agrees that such a maneuver was reckless is immaterial. This action could reasonably lead an officer to conclude Cottam was fleeing/attempting to elude. It is also immaterial as Pelton had probable cause to arrest Cottam for a violation under Chapter 316 and trespassing.

### 8. "One of Defendant Pelton's Police Officer colleagues came from the opposite direction in front of Plaintiff, essentially blocking Plaintiff."

Cottam appears to suggest that Pelton believed he stopped on the railroad tracks due to patrol vehicles coming in the opposite direction. Throughout litigation Cottam has referred to phrases such as "heading off at the pass" or "blocking" when addressing this theory. Pelton has never testified to such a maneuver or that the existence of the patrol vehicles coming in the opposite direction had any effect on his conclusion that Cottam was attempting to flee or elude. Pelton testified he was merely addressing the timing of events:

> Q. Going to page 10, Dr. Cottam directed your attention to a line of questioning starting at line 19 in regards to the other vehicles, the other patrol vehicles coming in the other direction and when you and he stopped on the railroad tracks.
>
> I just want to be clear in your testimony, both today and in your criminal, and in Dr. Cottam's criminal case. Was your testimony intended to reflect that the patrol officers coming in the other direction had any effect on Dr. Cottam's decision to stop?

> A. I did not have any knowledge that or specific belief that they did cause him to stop. My explanation is that all of these things were happening at the same time. Whether one caused him to stop or didn't cause him to stop, I cannot testify to.

(119-2. Pelton dep. (civil), p. 68, l. 13 – p. 69, l. 2).

Pelton repeatedly stated he did not know why Cottam stopped. It could have been any number of reasons, including patrol vehicles coming in the opposite direction. The fact that Pelton did not include it in his arrest affidavit, or that there is no report from other officers in regards to such a maneuver, is consistent with Pelton's position that he did not know why Cottam stopped on the tracks, or whether these officers had any effect. And that is the point—Pelton did not know what Cottam's intentions were after he observed his actions down U.S. 301, onto Oxford Street, and onto the railroad tracks. It is certainly reasonable that he could believe Cottam intended to flee if he was willing to maneuver around barricades and trespass onto the tracks. Cottam's desire to read into Pelton's testimony beyond the actual words on paper and speculate as to what Pelton could have been thinking, is insufficient to defeat qualified immunity and summary judgment.

Cottam ignores the other bases for qualified immunity, for which none of the supposed "disputed issues" are considerations. Cottam did not deny that he was speeding in violation of *Fla. Stat.* § 316.189(1). Additionally, Cottam does not deny he crossed onto the railroad tracks, for which there were "Do Not Enter" and "CSX No Trespassing" signs posted. Even in the video Cottam provided to the Court, it is clear these signs are in view of any vehicle attempting to cross the tracks. (Video 100_0038.AVI).

### D. Outcome of criminal proceeding

The disposition of the criminal proceeding is irrelevant to whether Pelton had probable cause to arrest Cottam. "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "[The U.S. Supreme Court] has made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." *Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103, 119-123 (1975)).

Pelton had probable cause, or at least arguable probable cause, to believe Cottam was fleeing/attempting to elude. Cottam's argument also fails as it relates to the probable cause that existed to arrest Cottam pursuant to violations of Chapter 316 and trespassing.

Notwithstanding the above, Cottam misrepresents the disposition of the criminal proceeding. The State Attorney filed a Motion to Remand to County Court on January 7, 2013. (Doc. 137-1). The Motion to Remand does not provide any basis as to why the State Attorney made such a decision, and any argument as to why would be speculative. Additionally, Cottam's Motion to Dismiss as to the reckless driving charges argues only that there is insufficient evidence to support a reckless driving charge. (Doc. 137-8). The motion did not, and consequently the Court's order would not, address probable cause in regards to Pelton's arrest of Cottam for fleeing/attempting to elude. And they further would not address probable cause that existed for the violation of Chapter 316 or trespassing, as those issues were not before the Court.

Notably, the Motion to Dismiss Cottam uses to support his claim is unsigned. (Doc. 137-8). And, no order on this Motion to Dismiss is provided as an exhibit.

### E. Affidavits of Cottam, Knezevich, and Akay should be stricken

Pursuant to Rule 56(c)(4):

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

*Id.*

Pursuant to Federal Rule of Civil Procedure 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Id. "For a matter to be considered within a witness's personal knowledge, it must be 'derived from the exercise of his own senses, not from the reports of others—in other words, [it] must be founded on personal observation.'" *See Poitevint v. United Recovery Systems, LP*, 899 F. Supp.2d 1230, 1235 (N.D. Fla. 2012).

Also pertinent, hearsay is inadmissible absent an exception. *Id.* "Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." *Id.*

And, "the 'sham affidavit' rule provides that an affidavit can be disregarded if its conflict with other evidence in the case is so pronounced that the affidavit rises to the level of a sham. Generally, discrepancies between a witness's affidavit and deposition do not defeat the admissibility of the affidavit, but instead go toward the credibility of the witness…However, courts have recognized that 'an affidavit can be disregarded when it constitutes a sham." *Id.* (internal citations omitted).

Based upon these rules, the affidavits should be stricken.

### 1. Cottam affidavit

Cottam's affidavit includes what he believes his entire testimony would be. He ignores his prior deposition testimony. To the extent his affidavit conflicts with his deposition testimony, it should be stricken. For instance, in Cottam's deposition, he testified he did not know how fast he turned onto Oxford street, but estimated 15 m.p.h. He then thought perhaps 10 m.p.h. In his affidavit, he now states it could *only be* 5-10 m.p.h. Regardless of the conflict, these figures are also inadmissible as they are not based upon any actual knowledge, but Cottam's mere "estimates"/speculation.

Additionally, Cottam's affidavit goes beyond his personal knowledge to address statements he heard from others, or to assert argument over facts. As to the arguments, they are duplicative of other portions of his response in opposition to Pelton's motion. Pelton has addressed those in either his motion or other parts of this reply (e.g., alleged factual disputes, criminal proceeding, Akay's testimony). Cottam otherwise has limited facts to offer, since, as he asserts, he never saw Pelton until he was on the railroad tracks. Of those limited facts, Cottam attempts to explain his mindset at the time of the pursuit and arrest. However, these statements are irrelevant since probable cause is analyzed from the information available to the officer at the time.

Finally, Cottam's affidavit as to what transpired after he was arrested is irrelevant. In particular, the actions of the City of Wildwood, the State Attorney's Office, and Florida Department of Law Enforcement, in response to Cottam's complaints about his arrest. None of these entities are parties to this lawsuit, and their actions after Cottam's arrest are not pertinent to the claims at issue.

## 2. Akay affidavit

Akay's personal observations on July 23, 2012 were initially recounted in an unsigned witness statement. She later prepared a second witness statement, adding to her personal observations. She admits the additions are not her personal observations. (Doc. 119, p. 6, fn. 5). Her affidavit contains the same, or similar, statements which go beyond her personal observations. For instance, Akay's affidavit in regards to estimated speeds, distances she viewed on an unidentified survey, her conversations between her and Cottam and documents Cottam has shown her, and her commentary on any evidence, should be stricken.

Akay also contradicts portions of her deposition testimony, and such portions of her affidavit should be stricken:

> Affidavit, ¶ 7: At that point, I was very close to the start of the large bridge that crosses over the railroad tracks. I had just seen Dr. Cottam pass the peak of the bridge and Dr. Cottam was already just out of my sight for what I believe to be about 2 seconds when I passed the police car off to the left as it turned on its lights. There were no other police cars anywhere in the vicinity between myself and Dr. Cottam.

> Affidavit, ¶ 13: At this point Dr. Cottam was out of my sight beyond the next set of lights which was Cleveland Ave. From the survey that Dr. Cottam commissioned, and had shown me, the distance as shown in the survey between Lion St [.] and Cleveland Ave [.] is 1791.1 feet. So Officer Pelton was more than 1800 feet behind Dr. Cottam when Officer Pelton was at Lion St.

In contrast, Akay's deposition:

> Q.   Fair to say that after Dr. Cottam passes the peak of the bridge you have no idea where his vehicle is at any given time?
>
> A.   Correct.

(Doc. 119-9, Akay dep., p. 51, l. 21-24)

Q. Do you remember at the time that you were at that intersection that you could look ahead and see where Cleveland Avenue was?

A. No.

Q. Okay. Why did you make the statement Dr. Cottam was still out of sight, at least past the next light which is Cleveland?

A. Why did I make that statement? Because it's the next - - the next time we went out there, I looked to see where he could possibly be. So he was after that intersection.

Q. Well, we've already established that after Dr. Cottam passed the peak of the bridge, you have no idea where his vehicle was on July 23, 2012; correct?

A. Correct. So he was still out of sight, which would be after Cleveland Avenue.

Q. But you weren't looking for his vehicle; right - -

A. Correct.

Q. - - on July 22? [sic]

A. Yes.

Q. Okay. And just tell me - - I'm going to show you these exhibits. Well, let's say 5B and C, at the intersection of Lion Street. Can you look in those two pictures and identify Cleveland Avenue by looking at them?

A. No. It's not visible.

Q. Do you see a traffic light in either of those photos?

A. No. I do not.

Q. Is it a guess on your part then where Dr. Cottam was at the point in time that the patrol vehicle passed you at Lion Street?

A. At that point in time, yes.

(Id., p. 53, l. 9 – p. 54, l. 18)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Affidavit, ¶ 8: There was also another car behind me that was probably 2 or 3 seconds behind me.

Affidavit, ¶ 9: As I and the other car behind me passed Clark St. [sic], I saw the Police car in my mirror cross the road and get into the lane behind and to the right of me.

In contrast, Akay's deposition:

Q. Were the vehicles that you described, this car in front of you and this one car behind you, did they remain with you in traffic along 301 South?

A. I don't remember.

Q. Do you remember any cars being around you at this point that you saw a patrol vehicle off to the left of you?

A. I do not remember.

Q. As you continue your drive over the bridge, did you make it a point to look in your rear-view mirror or your rear-side-view mirror to see where the patrol vehicle was going?

A. Yes.

Q. Okay. What did you see?

A. I saw him with his lights on behind me?

Q. Where behind you?

A. I don't know if it was left lane or right lane.

Q. When you say behind you, you mean directly behind you?

A. No.

Q. Do you know the distance how far behind you he was?

A. I don't know.

(Id, p. 45, l. 7 to p. 46, l. 4)

**************************************************

Even without these contradictions, neither Akay's written statements, deposition testimony, or affidavit change the fact that she turned off of U.S. 301 at Lion Street, and has no personal knowledge of the movement of either the patrol vehicle or Cottam's vehicle after that point. Therefore, she cannot dispute Pelton's observations from Lion Street to the point where Cottam trespassed onto the railroad tracks. She also has no personal knowledge of time, speed, or distance, and admits any such figures she provides are "guesstimates." (Id., p. 39, l. 12 to p. 40, l. 10).

### 3. Knezevich affidavit

Knezevich regurgitates his expert report in affidavit form, with a few exceptions. It appears Knezevich has re-worded certain paragraphs, which does not change the substance, or he removes superfluous language including "it is this writer's opinion."

The substantive change appears to be in regards to Knezevich's realization that Officer Christopher Smalt of the Wildwood Police Department had prepared a supplemental report in regards to his involvement at the arrest scene following Pelton's pursuit of Cottam, and Cottam's arrest (Doc. 137-26, p. 10). Despite Cottam and Knezevich's contention, Cottam possessed this report prior to disclosure of Knezevich as an expert. In Pelton's response to Cottam's first request to produce dated April 14, 2017, Pelton provided Cottam with all reports, including Smalt's. (Ex. A, composite, Pelton's RTP response 11(a)). Either Knezevich failed to notice Smalt's report prior to preparing his opinions, or Cottam failed to provide him with the information. Regardless, Knezevich's added "opinion" should be stricken as it was not disclosed in his report or prior to the close of discovery. Additionally, it is irrelevant as to whether Pelton had

probable cause to arrest Cottam, and otherwise fails to create any genuine dispute of a material fact.

Pelton further includes by reference his *Motion to Strike Plaintiff's Expert* (Doc. 123), wherein Pelton outlined the bases for striking Knezevich as an expert due to his lack of qualifications and opinions which did not require any expertise and instead invaded the province of the jury.

### F. Inadmissible evidence cannot be considered on summary judgment.

Cottam submits inadmissible evidence for the Court's review. The same should be stricken from the record. *See Bush v. Barnett Bank of Pinellas County*, 916 F.Supp. 1244, 1256 (M.D. Fla. 1996)("In order for this Court to consider inadmissible evidence, *Celotex* requires the evidence to be substantively admissible, even if the actual for of the information is not.")

#### 1. Cottam's "Acceleration Profile"

On July 23, 2012, Pelton was driving a 2003 Ford Crown Victoria. (Ex. B, Patrol 44 Title/Registration). The "acceleration profile" Cottam provided, dated in 2010, does not indicate whether this specific year, make, and model of vehicle was tested. Additionally, Cottam does not explain who conducted this test, what the qualifications of the person(s) conducting this test were, and he otherwise has no expertise in interpreting the results and applying it to the facts of this case. He also makes no effort to apply it to the facts of the case by identifying any speeds, distance, or times, that he would have used to reach his conclusions. This document was also not part of Knezevich's expert opinions, nor would he be qualified to render such an opinion.

### 2. Cottam's "video re-enactment"

Cottam directs the Court to his "video re-enactment" which he created to allegedly explain location, speeds, and distance of each vehicle. He placed pieces of paper along a yardstick and measuring tape, and took photographs at intervals, which he then pieced together in a series. It is not an accurate depiction of the roadway on the date of his arrest, nor is it an accurate depiction of any vehicle's movement on the roadway. (Doc. 119-8, Cottom dep., p. 134-154).

In creating the video, Cottam used Akay's supposed personal observations, and his and her "estimates" of speed and distance. As has been established, Cottam has no basis for his "estimates" since he claims he did not see Pelton until he reached the railroad tracks. And, Akay did not personally observe any vehicles after she turned onto Lion Street, for Cottam to even closely "estimate" the position of either his or Pelton's vehicle. Even in his video before Lion Street, Cottam admits he did not place the vehicles in the correct positions. For instance, the blue piece of paper which depicts an unidentified car on the roadway is next to Akay's vehicle, when Cottam testified it was actually in front of her vehicle on the date of his arrest. He also did not include another vehicle in the video which was supposedly on the roadway. (Id.).

No part of Cottam's video can be verified as accurate; it should not be considered.

### 3. Blevin's video

The video Cottam submitted, purportedly prepared by an investigator Blevins, should also be stricken. The traffic conditions on the roadway at the time of Blevins video do not depict what has been described as the conditions on July 23, 2012. Neither Pelton nor Akay state that there was traffic that impeded Pelton's initiation of a traffic

stop. Additionally, Blevins would not know the speed to put on his vehicle, or to put on any other surrounding vehicle to show either Akay, Pelton, or Cottam's perspectives on the arrest date. He stated in the video he was traveling 40-45 m.p.h., which is not consistent with Cottam's clocked speed or even Akay's "guesstimates." Blevins also did not conclude the video on the railroad tracks where Cottam stopped.

That said, to the extent the Court considers this video, it should be noted that in the last seconds of Blevins video, the "CXS No Trespassing" sign was again visible.

### G. Cottam's Request for Hearing

Pelton disagrees a hearing on his motion is necessary. The parties have presented the record evidence and had an opportunity to raise all arguments to support their respective positions. There are no unusual issues which would warrant consideration outside the Court's normal practice of ruling upon the papers submitted.

### H. Conclusion

Cottam fails to identify any genuine dispute of any material fact to defeat summary judgment. He further relies upon either inadmissible affidavits or other irrelevant/inadmissible evidence to support his claims, which cannot be considered. Pelton had probable cause to arrest Cottam, and Pelton is entitled to summary judgment in his favor.

Respectfully submitted this 1st day of December, 2017.

BELL & ROPER, P.A.

By:    **/s/** *Anna E. Engelman*
      Michael J. Roper, Esq.
      Fla. Bar No.: 0473227
      mroper@bellroperlaw.com
      Anna E. Engelman, Esq.
      Fla. Bar No.: 016517
      aengelman@bellroperlaw.com
      2707 E. Jefferson St.
      Orlando, FL 32803
      Telephone: (407) 897-5150
      Facsimile: (407) 897-3332
      *Counsel for Sergeant Douglas Pelton*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on this 1st day of December, 2017.

**/s/** *Anna E. Engelman*
Anna E. Engelman, Esquire
Fla. Bar. No.: 016517
aengelman@bellroperlaw.com