# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

JOHN COTTAM,

      Plaintiff,

v.                                   Case No: 5:16-cv-413-Oc-30PRL

DOUGLAS PELTON,

      Defendant.

_____

## SUMMARY JUDGMENT ORDER

Plaintiff John Cottam sued Defendant Douglas Pelton, a Wildwood police officer who arrested Cottam in 2012. Pelton moves for summary judgment, arguing he has qualified immunity because he had probable cause to arrest Cottam. Cottam argues there are disputed facts because Pelton fabricated the charges against him and habitually lied about what occurred. The Court concludes the undisputed facts show Pelton is entitled to summary judgment because he had at least arguable probable cause to arrest Cottam.

## UNDISPUTED FACTS

While some of what occurred on July 23, 2012—the day of Cottam's arrest—is unclear, the following material facts are undisputed:

Cottam, a dermatologist, was leaving his satellite office in Lady Lake and traveling to his home in Brandon around 4:00 p.m. Cottam's usual route home took him south on U.S. Highway 301 approaching Wildwood. Cottam missed a turn that would have taken him to Interstate 75, and decided to take an alternate route that led him through Wildwood.

Pelton was positioned in his patrol vehicle on the northbound side of U.S. 301 near the intersection of Clark Street. Pelton, using his rear and front radars, observed Cottam traveling south on U.S. 301 at 67 mph—the posted speed limit in the area was 40 mph. Pelton turned on his flashing lights and began pursuing Cottam. Fortuitously, one of Cottam's medical assistants, Sarah Akay, was also traveling home on U.S. 301. She observed Cottam speed by her and Pelton begin his pursuit with his flashing lights activated, but no siren. (The parties dispute whether the siren was activated during the pursuit.) Akay turned off U.S. 301 shortly after crossing a bridge just beyond Clark Street and can offer no more clarity about what transpired in the pursuit.

Cottam did not see Pelton pursuing him on U.S. 301 and continued on his alternate route. Cottam turned west on Oxford Street, passing a public parking lot. Cottam continued a short distance until Oxford ended at sets of railroad tracks where there was no crossing. He passed a "DO NOT ENTER" sign and a second sign that reads, "CSX Transportation PROPERTY NO TRESPASSING." He maneuvered around five concrete barriers in an attempt to get to the other side of the railroad tracks where Kilgore Street begins.[1] After crossing the first set of railroad tracks, Cottam says he saw Pelton's flashing lights for the first time and stopped while in between another set of railroad tracks.

Pelton approached Cottam's vehicle and began to place him under arrest for fleeing and eluding in violation of § 316.1935(2), Florida Statutes, a third-degree felony. That statute provides as follows:

---

[1]  Kilgore Street turns into County Road 44A, which connects to State Road 44. State Road 44 then connects to Interstate 75.

2

> Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 316.1935(2), Fla. Stat. (2012). Three other Wildwood police officers arrived on the scene—two coming from the Kilgore side of the railroad tracks—as Pelton was placing Cottam under arrest. Cottam spent a few hours in jail, and then was released on bond.

Cottam was subsequently prosecuted by the State for the fleeing and eluding.[2] But in January of 2013, the State voluntarily reduced the charge from fleeing and eluding to reckless driving.[3] Cottam's criminal defense attorney moved to dismiss the reckless driving charge, arguing that there was no evidence Cottam operated his vehicle in a manner that endangered persons or property. The court dismissed the charge. Cottam never appeared in Court or had other significant pretrial restrictions placed on him.

## PROCEDURAL HISTORY

In 2016, Cottam, proceeding *pro se*, filed this lawsuit against Pelton. He also sued other individuals, including Pelton's supervisors, the City of Wildwood, several assistant state attorneys, and a Florida Department of Law Enforcement agent. The Court dismissed the counts against all Defendants except Pelton. In the operative Complaint (Doc. 70), Cottam alleges the following counts against Pelton: False Arrest (Count I), malicious prosecution (Count II), intentional infliction of emotional distress (Count IV), and

---

[2] The charge was brought in the Circuit Court of the Fifth Judicial Circuit of Florida, in and for Sumter County, in case 2012-CF-000503-A.

[3] The reduced charge was brought in the County Court of the Fifth Judicial Circuit of Florida, in and for Sumter County, in case 60-2013-CT-000059-A.

negligent infliction of emotional distress (Count V). The first two counts are brought as 42

U.S.C. § 1983 actions, while the last two are brought as state law claims.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any show there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

(internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual

disputes between the litigants will not defeat an otherwise properly supported summary

judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable

to the claimed causes of action will identify which facts are material. *Id.* Throughout this

analysis, the court must examine the evidence in the light most favorable to the nonmovant

and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the

absence of a genuine issue of material fact, whether or not accompanied by affidavits, the

nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be

significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49.

This Court may not decide a genuine factual dispute at the summary judgment stage.

*Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual

issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

The Court concludes Pelton is entitled to summary judgment in his favor. Before addressing the reasons why, though, the Court provides a short primer to address some of the concerns voiced by Cottam.

To summarize Cottam's argument, Pelton is a liar who fabricated evidence against him. Reliance on the fabricated evidence caused the State to criminally prosecute Cottam, thus putting his medical license and livelihood in danger. And while the charge against him was dismissed—which he seems to equate with absolution from any wrongdoing—Cottam was not satisfied. He wanted Pelton held accountable for his alleged abuse of power. He asked the Wildwood Police Department to do so, and it refused. He asked the Florida Department of Law Enforcement to do so, and it refused. He then asked the State Attorney's Office to do so, and it refused. And now, by focusing so much of his time in this case on trying to prove Pelton lied, it appears he wants this Court to do what the agencies did not: hold Pelton accountable.

While the Court certainly does not condone lying, it sees scant evidence that the officer here lied. Because he could have charged Cottam with several offenses—including fleeing and eluding—on the facts Cottam admits, there was no reason for Pelton to lie. The Court understands this does little to salve Cottam's grievance. But as the Eleventh Circuit recently explained, "The satisfaction of individual grievances must be balanced against the societal harm that would result from allowing lawsuits to proceed against public servants unchecked." *Hammett v. Paulding Cty.*, No. 16-15764, 2017 WL 5505114, at *6 (11th Cir. Nov. 17, 2017).

Because of the required balancing of interests, the Court concludes many of the issues Cottam spends so much time arguing are immaterial. As explained below, whether Pelton had his siren on is immaterial to whether he is entitled to qualified immunity for false arrest because Pelton had probable cause to arrest Cottam for other offenses. Regardless of whether Pelton fabricated evidence used to prosecute him, Cottam is unable to satisfy the requirements for malicious prosecution because he was not "seized" after his initial arrest. And while Cottam may have been distressed by Pelton's actions, the actions were not so outrageous as to allow Cottam to pursue an intentional or negligent infliction of emotional distress claim.

## A. Pelton Is Entitled to Summary Judgment on § 1983 Claims

Pelton is entitled to summary judgment on the false arrest and malicious prosecution counts because he has qualified immunity. Qualified immunity protects government officials engaged in discretionary functions unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Keating*

6

*v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted). So qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). At the summary judgment stage, courts view the facts from the plaintiff's perspective because the determinative issue is "not which facts the parties might be able to prove, but, rather, whether or not certain given facts" demonstrate a violation of clearly established law. *Santana v. Miami-Dade Cty.*, No. 15-14338, 2017 WL 2191468, at *4 (11th Cir. May 17, 2017).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). Once a defendant demonstrates he was acting within the scope of his discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the [official] violated a constitutional right, and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009).

Here, Pelton was acting within the scope of his discretionary authority when he stopped and arrested Cottam. So the burden shifts to Cottam to demonstrate that Pelton violated Cottam's constitutional rights and that the rights were "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of the actions. *Saucier v. Katz*, 533 U.S. 194, 201, (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

### 1.  False arrest claim

As an initial matter, the Court notes that Cottam does not contest the validity of the traffic stop. He admits that he was speeding and that Pelton had the authority to stop him and issue him a speeding citation without violating Cottam's clearly established constitutional rights. So Cottam's false arrest claim hinges on the arrest itself.

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim. The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland*, 382 F.3d at 1226 (internal citations omitted). "In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause' " to effectuate the arrest. *Davis v. Williams,* 451 F.3d 759, 762–63 (11th Cir. 2006). "Arguable probable cause exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officers effectuating the arrest could have believed that probable cause existed." *Williams v. Sirmons*, 307 F. App'x 354, 358 (11th Cir. 2009) (citing *Thornton v. City of Macon,* 132 F.3d 1395, 1399 (11th Cir. 1998)).

When considering arguable probable cause in a false arrest claim, "an arrest may be for a different crime from the one for which probable cause actually exists…." *Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013). In other words, "arguable probable cause to arrest for *some* offense must exist in order for officers to assert qualified immunity from suit." *Id.* (italics in original); *see also Reid v. Henry Cty., Ga.*, 568 F. App'x 745, 749 (11th Cir. 2014) (holding, "As long as probable cause existed to arrest the suspect for any offense,

8

the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges."). The Court concludes Pelton had probable cause or, at the very least, arguable probable cause to arrest Cottam for four offenses.

First, Pelton had probable cause to arrest Cottam for fleeing and eluding in violation of § 316.1935, Florida Statutes, albeit under a different subsection. Subsection (1) provides as follows:

> It is unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order or, having stopped in knowing compliance with such order, willfully to flee in an attempt to elude the officer, and a person who violates this subsection commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 316.1935(1), Fla. Stat. (2012).[4] So unlike the subsection under which Cottam was charged,[5] § 316.1935(1) does not require Pelton to have had his siren activated.

Based on Pelton's observations, he had arguable probable cause to believe Cottam violated § 316.1935(1). Pelton pursued Cottam down U.S. 301 with his flashing lights

---

[4] Although it is a third-degree felony just like the offense with which Cottam was charged, this subsection is considered a lesser-included offense of subsection (2). *Slack v. State*, 30 So. 3d 684, 687–88 (Fla. Dist. Ct. App. 2010).

[5] The Court concludes there is a disputed issue of material fact as to whether Pelton had arguable probable cause to arrest Cottam under § 316.1935(2). The Court notes that although Pelton testified he had activated his siren, neither Akay nor Cottam heard the siren and it is not audible in the audio logs. But that is not enough to say Pelton fabricated this fact. It is possible that Pelton had his siren activated at some point during the pursuit after he passed Akay but before Cottam observed Pelton. And this could have been at a time when Pelton was not transmitting over the radio. If that was the case, Pelton would have had probable cause under subsection (2) because Florida law does not require Pelton to have had his siren activated for the entirety of the pursuit. *See Dupler v. Hunter*, No. 3:16-CV-191-J-34MCR, 2017 WL 3457032, at *8 n.12 (M.D. Fla. Aug. 11, 2017) (explaining that even a "quick siren" is sufficient to satisfy the probable cause inquiry under § 316.1935(2), Fla. Stat.).

activated. As he approached Cottam, who claims he had slowed down approaching his turn on Oxford Street, Pelton observed Cottam pass a public parking lot at which he could have stopped. Pelton then observed Cottam pass a "DO NOT ENTER" sign and a "NO TRESSPASSING" sign before maneuvering around barricades and attempting to cross railroad tracks.[6] Based on these observations, Pelton had at least arguable probable cause to arrest Cottam for fleeing and eluding.

Second, Pelton had probable cause to arrest Cottam for trespassing on property other than a structure or conveyance, in violation of § 810.09(1)(a)(1), Florida Statutes, a first-degree misdemeanor. There was a posted "NO TRESPASSING" sign before the railroad tracks. Pelton observed Cottam pass the sign, enter upon CSX property, and maneuver around concrete barriers before stopping between the railroad tracks. Although Cottam claims he did not see the sign because he was looking for trains, Cottam's personal observations are irrelevant as to whether Pelton had arguable probable cause to arrest Cottam for committing a first-degree misdemeanor in his presence. So the Court concludes Pelton had at least arguable probable cause to arrest Cottam for trespassing.

Third, Pelton had probable cause to arrest Cottam for interference with a railroad track in violation of § 860.09, Florida Statutes, a third-degree felony. The statute provides,

> Any person, other than an employee or authorized agent of a railroad company acting within the line of duty, who knowingly or willfully moves, interferes with, removes, or obstructs any railroad switch, bridge, track, crossties, or other equipment located on the right-of-way or property of a

---

[6] Although Cottam claims to have stopped as soon as he saw Pelton, that is irrelevant. It does not matter whether Cottam was actually attempting to flee from Pelton; the relevant inquiry is whether a reasonable officer in Pelton's shoes could have believed Cottam was attempting to flee.

railroad and used in railroad operations is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 860.09, Fla. Stat. (2012). Pelton observed Cottam navigate his car between two railroad tracks and stop his vehicle, obstructing the use of the tracks. Pelton testified in his civil deposition that he believed he could have arrested Cottam for violation of this statute, but chose not to do so. Based on his observations, the Court concludes Pelton had at least arguable probable cause to arrest Cottam for interference with a railroad track.

Finally, the Court concludes Pelton had probable cause to arrest Pelton for speeding, in violation of § 316.189(1), a non-criminal traffic violation. Pelton observed Cottam traveling 67 mph in an area where the speed limit was 40 mph, which Cottam concedes. Although a non-criminal offense, the Eleventh Circuit has held that officers are permitted to make custodial arrests for non-criminal offenses in Florida, specifically for violations of Chapter 316, Florida Statutes. *See Sebastian v. Ortiz*, No. 16-20501-CIV, 2017 WL 4382010, at *5 (S.D. Fla. Sept. 29, 2017) (listing several Eleventh Circuit cases holding officers had probable cause to make arrests for non-criminal violations of Chapter 316). So the Court concludes Pelton had probable cause to arrest Cottam for speeding.

So regardless of whether Pelton had probable cause or arguable probable cause to arrest Cottam for fleeing and eluding in violation § 316.1935(2), the Court concludes even Cottam's version of the facts show Pelton had probable cause to arrest Cottam for *an* offense. And that is enough to entitle Pelton to qualified immunity for false arrest. So Pelton is entitled to summary judgment on this claim.

### 2.  Malicious prosecution claim

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland*, 382 F.3d at 1234.

As to the first prong, Florida law requires Cottam to prove six elements to support his malicious prosecution claim:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Id.*  The presence of probable cause defeats a claim of malicious prosecution. *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016).

As to the second prong, Cottam must prove he was "seized" in relation to the prosecution. As the Eleventh Circuit explained in *Kingsland*,

> Kingsland bears the burden of proving that she was seized in relation to the prosecution, in violation of her constitutional rights. In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted. Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest.

382 F.3d at 1235. "Thus, in addition to the common law elements, a § 1983 plaintiff must prove that he was 'seized in relation to the prosecution, in violation of [his] constitutional rights.'" *Donley v. City of Morrow, Georgia*, 601 F. App'x 805, 813 (11th Cir. 2015)

(quoting *Kingsland*, 382 F.3d at 1235) (alteration in original). "Normal conditions of pretrial release, such as bond and a summons to appear, do not constitute a seizure violative of the Fourth Amendment, 'barring some significant, ongoing deprivation of liberty, such as restriction on the defendant's right to travel interstate.'" *Bloom v. Alvereze*, 498 F. App'x 867, 875 (11th Cir. 2012).

Cottam's malicious prosecution claim fails for three reasons. First, as explained above, Pelton had probable cause to arrest Cottam. The admitted facts show that Pelton had probable cause to arrest and charge Cottam with third-degree fleeing and eluding under § 316.1935(1). So while there is a factual dispute as to whether Pelton had his siren on as required under § 316.1935(2), the Court concludes the undisputed facts show Pelton had probable cause to arrest and charge Cottam with fleeing and eluding, thus entitling Pelton to qualified immunity.

Second, Cottam cannot prove damages resulting from the allegedly malicious prosecution. This is not the traditional case where charges were fabricated and the plaintiff could not have been prosecuted for an offense of the same magnitude but-for the fabrication. Here, Cottam was prosecuted for third-degree fleeing and eluding under § 316.1935(2). The Court has already concluded that Pelton had probable cause to arrest and charge Cottam with third-degree fleeing and eluding under § 316.1935(1). So even if Pelton fabricated facts to support the fleeing and eluding charge under subsection (2), the facts to which Cottam admits would have allowed the same prosecution to take place under subsection (1), a lesser-included offense with the same potential penalties. The Court

concludes, therefore, that Cottam could not have been damaged because the same prosecution could have occurred regardless of Pelton's allegedly wrongful acts.[7]

Third, the record evidence shows Cottam was not "seized" in violation of his Fourth Amendment rights in relation to the prosecution. In his deposition, Cottam explained that he spent a few hours in jail but was not arraigned during that time. After that, Cottam boasts that the charge against him was dismissed even though, "I never saw a judge in the entire case, never saw a jury in the entire case, never said one word in the entire case." (Doc. 119-8, 128:3–5). By his own testimony, Cottam was never subjected to a Fourth Amendment seizure once the prosecution began. So the Court concludes Pelton is entitled to summary judgment on the malicious prosecution claim even if he is not entitled to qualified immunity.

**B.  Pelton is Entitled to Summary Judgment on State Law Claims**

The Court concludes that Pelton is also entitled to summary judgment on Cottam's claims for intentional infliction of emotional distress and negligent infliction of emotional distress. The basis for these claims in the operative Complaint is that Pelton "knew, or should have known, that fabricating a felony criminal charge and then intentionally arresting and prosecuting the Plaintiff on that fabricated felony charge …" would constitute intentional or negligent infliction of emotional distress. (Doc. 70, ¶¶ 76 and 81). The undisputed facts, though, show Cottam cannot succeed on either claim.

---

[7] The Court will not speculate as to why the State Attorney's Office reduced the charge to reckless driving instead of fleeing and eluding under subsection (1). Suffice to say, the Court concludes there are many reasonable bases for the decision that do not imply a conspiracy against Cottam.

As to the intentional infliction of emotional distress claim, Cottam was required to show that that Pelton's actions were "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *Von Stein v. Brescher*, 904 F.2d 572, 584 (11th Cir. 1990). The standard in Florida for outrageous conduct—which is a question of law—is extremely high. *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008) (citing *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985)). Pelton's actions of intentionally arresting and charging Cottam with a felony were not so outrageous to establish a claim for intentional infliction of emotional distress because Pelton had probable cause to arrest and charge Cottam for third-degree fleeing and eluding, under § 316.1935(1). So the Court concludes these acts do not meet the exacting standard required for outrageous conduct under Florida law.

Turning to the negligent infliction of emotional distress claim, the Court concludes Pelton is entitled to immunity under § 768.28(9)(a), Florida Statutes. The statues provides that no government agent (which includes Pelton) shall be personally liable for acts within the scope of his employment unless the government agent "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat. (2012). So a claim alleging negligent infliction of emotion distress—which necessarily precludes intentional bad faith or malicious acts—will not lie.

## CONCLUSION

Pelton is entitled to summary judgment on all claims. While there is a dispute about certain facts—whether Pelton had his siren on at some point in the pursuit, whether Pelton

called over the radio that Cottam was fleeing, and whether Pelton observed Cottam look at him in his rear-view mirror, *et cetera*—those facts are immaterial. The undisputed facts show Pelton had probable cause to arrest and charge Cottam with several offenses. The undisputed facts show Cottam was never seized, in violation of his constitutional rights, related to his prosecution. The undisputed facts show Pelton's act of arresting and charging of Cottam did not rise to the level of outrageous conduct under Florida law. And the undisputed facts show that Pelton is entitled to sovereign immunity as a governmental agent for his alleged negligent acts that caused Cottam emotional distress. So Pelton is entitled to summary judgment in his favor.

Accordingly, it is ORDERED AND ADJUDGED that:

1.     Defendant's Motion for Summary Judgment (Doc. 119) is GRANTED.

2.     The Clerk is directed to enter a Final Judgment in favor of Defendant Douglas Pelton and against Plaintiff John Cottam on all counts.

3.     All pending motions are denied as moot.

4.     The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida, this 8th day of December, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record